IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALBERTO SERRANO, as Administrator of the Estate of JUAN-MANUEL MEDINA-SEVILLA, deceased, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF IRONDALE, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 06-AR-0122-S |

## MEMORANDUM OPINION

On November 29, 2007, this court rendered an opinion and entered an accompanying order that granted the motion for summary judgment filed in the above-entitled case by defendant, P.S. Kelley ("Kelley"), as to some of plaintiffs' claims. However, the court denied Kelley's motion insofar as it sought qualified immunity against liability under 42 U.S.C. § 1983. Now the court must rule on the motion for summary judgment filed by the other defendant, City of Irondale ("the City"). As a corollary, the court will express itself on the City's and Kelley's motion to strike the expert report of Dr. Phillip Hayden ("Dr. Hayden"), and on the City's motion to strike the affidavit of José Martinez ("Martinez").

### Serrano's § 1983 Claim

Plaintiff, Alberto Serrano ("Serrano"), in his capacity as

1

administrator of the estate of Juan-Manuel Medina-Sevilla ("Sevilla"), deceased, claims that the City violated the Fourth and Fourteenth Amendment rights of Sevilla by creating or permitting a law enforcement climate that proximately caused Kelley to use excessive force on Sevilla in the form of a fatal bullet. Realizing that he cannot proceed against the City pursuant to 42 U.S.C. § 1983, under a theory of *respondeat superior* based on his allegation of unconstitutional conduct by Kelley, Serrano attempts to traverse the difficult road around *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 (1978), that is laid out by the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989), and is elaborated most recently by the Eleventh Circuit in *Powell v. Barrett*, 496 F.3d 1288, 1315 (11th Cir. 2007).

In his complaint, Serrano alleges, *inter alia*, that "Kelley used excessive force upon the decedent based in part upon the decedent's Mexican or Hispanic origin". It should be apparent from this court's earlier opinions of December 12, 2006, January 16, 2007, and November 29, 2007, that the viability of Serrano's Fourth Amendment claim of excessive force does not depend upon a finding of animus by Kelley toward Hispanics, whether or not any such bias could have been picked up by Kelley as a result of exposure to a constitutionally deficient culture within the City's police department. "Excessive force" is "excessive force", without regard

to the ethnicity of the person who falls victim to it.  This is not to say that the neighborhood environment where the force is applied, or the ethnicity of the injured party, can never be relevant in determining whether there was, in a particular case, a violation of the Fourth Amendment's prohibition against an unreasonable seizure.

> Serrano also alleges:
>
> The City... failed to provide police officers with adequate training on the lawful use of force, failed to properly hire and supervise police officers, failed to provide police officers with adequate training as to the equal protection rights of individuals of Mexican or Hispanic origin.  These failures contributed to the deprivation of the decedent's rights.

When this court spoke on December 12, 2006, and January 16, 2007, it thought it had succeeded in eliminating all of the claims of both plaintiffs against both defendants for alleged inadequate police training, except, possibly, to the extent that plaintiffs might subsequently offer evidence of a training regimen in the police department that can demonstrate deliberate indifference by the City to Fourth Amendment concerns, and/or to the Fourteenth Amendment's guarantee of equal protection to all citizens.  This court still believes that on December 12, 2006, and January 16, 2007, it trimmed the scope of the inquiry.  Serrano apparently thinks the court accomplished little by the way of trimming in its earlier opinions.

> Continuing, Serrano alleges:

> The violations of the decedent's... constitutional rights were caused by the implementation of a custom, policy, or official act of the City or, in the alternative, a practice pattern, policy, custom, or usage followed or established by the City that regardless of whether it was authorized by written law or express municipal policy was so persistent and well settled as to have gained the force of law. Such custom, policy, act, practice, pattern or usage includes but is not limited to the failure to properly hire, train, retain, or supervise police officers, and the failure to similarly treat individuals of Mexican or Hispanic origin with the same constitutional dignity accorded to individuals of other ethnic backgrounds.

The only proof Serrano has offered to support the allegation that the City had a practice or policy of discriminating against Hispanics and/or failing to train its police officers in the need to provide equal treatment to Hispanics, is the affidavit of José Martinez, who says that on an occasion prior to the incident here complained of, the City's police officers put up roadblocks at the trailer park where Sevilla lived and later was killed, while not doing so in other parts of the City, and that Hispanics were stopped at the roadblocks, whereas non-Hispanics were not. The totality of the circumstances under which the roadblocks were erected nowhere appears, so that the court has no way to evaluate or to ascertain the reasonableness of what the City did in this regard. For aught appearing, the roadblocks may have been absolutely necessary to public safety. In addition, Serrano submits the report of Dr. Hayden in which this experienced expert witness on proper police procedure "observes" that the City had a custom or policy of dealing with Hispanics differently from its

policy or practice in dealing with non-Hispanics. Dr. Hayden cites two other incidents in which non-lethal force was used to subdue a suspect, but these situations had different circumstances and do not support his "observation". Dr. Hayden provides no concrete evidence to support this "observation", which, in effect, constitutes no more than an argumentative opinion, based on hearsay and probably beyond his competence as an expert. If it is possible for Dr. Hayden to deduce such a custom and practice from the mere erection of roadblocks (Dr. Hayden does not mention the roadblocks) and/or from the fact that an Hispanic man was shot on his front porch, such a deduction could just as easily be made by a jury, without any need to rely upon an expert's opinion as to the "do's and don't's" of law enforcement. If this court could let Dr. Hayden decide the issue, the court would have to let the jury decide the issue. The court can find no evidence to demonstrate what actual training was given or was not given to the City's police officers with respect to equal or unequal treatment of citizens, or with respect to its shooting policy, except the testimony of the police chief himself, who said that it is against City policy to shoot an unarmed suspect. Dr. Hayden's opinion does not substitute for the absence of evidence that might create a jury triable issue on City policy to get around *Monell*.

At the risk of repetition, even giving Serrano the benefit of all favorable inferences, the evidence still does not rise to the

level of proof that could establish a *prima facie* case of a *de facto* custom and practice by the City that proximately caused a violation of the Fourth Amendment by Kelley. The setting up of roadblocks does not suggest, much less prove, a **pervasive** practice in the police department of mistreating Hispanics. Without an offending written policy by the City (something that no § 1983 plaintiff has ever been able to prove), the Supreme Court and the Eleventh Circuit have combined to make it virtually impossible to transmogrify an isolated incident into an official policy that violates a constitutional right. Serrano has not proven a series of incidents that could indicate a course of conduct so widespread in the City that it actually became the City's policy to act "consciously against", or "with deliberate indifference to" the constitutional rights of persons like Sevilla to be free of the imposition of excessive force and/or to not be entitled to the equal protection of the law. There is simply no evidence to create a question of City policy worthy of jury resolution.

The court allowed Serrano to amend his complaint to plead a cause of action against the City, but he has failed to support with evidence the allegations that was necessary to a statement of a § 1983 claim against a municipality.

### Para de Medina's § 1983 Claim

The City also moves for summary judgment on Para de Medina's § 1983 claim, in which she avers that she incurred a constitutional

injury in the form of a warrantless search of her home, proximately caused by the City's alleged pattern and practice of discriminatory treatment of Hispanics. As in Serrano's § 1983 claim against the City, the first step in evaluating Para de Medina's claim is to determine whether any constitutional right was violated by any employee of the City.

The City justifies its search of Para de Medina's premises after the fatal shooting of Serrano by invoking the proposition found in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093 (1990), to the effect that a search without a warrant is constitutionally permissible if it is a "protective sweep." In *Buie*, the Supreme Court determined that the reasonableness standard of the Fourth Amendment permits a warrantless search in the form of a "protective sweep" of the area immediately surrounding the place of arrest, and a more cursory sweep of the surrounding areas for guns/other suspects if the suspect has been lawfully **"arrested"**, and when the arresting officers have an articulable suspicion that there was a serious remaining possibility of danger. *Id.* at 334-37, 1098-1100. However, the Supreme Court was specific in permitting this type of warrantless search only when a subject has been lawfully **"arrested"**. *Id.* at 337, 1099-1100. In the instant case, although Sevilla was **"seized"** within the meaning of the Fourth Amendment, arguably he was not **"arrested"**. Thus, the search of the house, despite the fact that it was short and cursory, may not have come

within the exception for a *Buie* protective sweep.

The circuits have split over the question of whether a protective sweep is permissible only in the context of an **"arrest"**. Compare *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006)(declining to extend *Buie* to sweeps other than those incident to an arrest), with *United States v. Gould*, 364 F.3d 578, 584 (5th Cir. 2004)(holding that an arrest is not a *per se* indispensable element of a protective sweep).  This is a serious constitutional question, pitting the concern for privacy and the sanctity of the home against the concern for police officer safety. Some circuits have interpreted *Buie* extremely narrowly, refusing to extend it to any context beyond a brief search in conjunction with an **"arrest"**.  *See, e.g., Torres-Castro*, 470 F.3d at 998; *United States v. Waldner*, 425 F.3d 514, 517 (8th Cir. 2005); and *United States v. Reid*, 226 F.3d 1020, 1027 (9th Cir. 2000).  Other circuits have taken a broader view, extending *Buie* to a limited number of situations where an **"arrest"** was not involved.  *See, e.g., Gould*, 364 F.3d at 584; *United States v. Martins*, 413 F.3d 139, 150 (1st Cir. 2005); *United States v. Miller*, 430 F.3d 93, 100 (2d Cir. 2005); and *United States v. Garcia*, 226 F.2d 1273, 1282 (9th Cir. 1993)(indicating an intra-circuit split in the Ninth Circuit).

The Eleventh Circuit, which binds this court, has recognized that the Supreme Court has not taken a clear stance on the

constitutionality of a protective sweep not incident to a lawful arrest.  *See United States v. Delancy*, 502 F.3d 1297, 1307 (11th Cir. 2007).  Although this court predicts that this particular seizure by Kelley's use of deadly force would be found by the Eleventh Circuit sufficiently analogous to, if not identical to, the "**arrest**" that would entitle the police to a warrantless "protective sweep", and therefore not to constitute a violation of the Fourth Amendment, this court will not rely upon that prediction, particularly when another *Buie* requirement is that the arrest be "**lawful**", and the lawfulness of this particular seizure remains for jury determination unless the Eleventh Circuit grants Kelley the qualified immunity denied him by this court.

If a warrantless search of a home after a seizure by death constitutes a constitutional violation, it does not alter the fact that Para de Medina, like Serrano, has not shown that such a search by the police officers who came into her home was the proximate consequence of a pattern or a practice by the City of discrimination against Hispanics, or of deliberate indifference to illegal searches.  Para de Medina offers the same evidence offered by Serrano.  No evidence has been presented to show a custom or practice of conducting warrantless searches of Hispanic homes.  Again, this incident remains an isolated and, for aught appearing, a unique occurrence.  There is no genuine issue of any material fact regarding Para de Medina's § 1983 illegal search claim.

**Para de Medina's Conversion Claim**

In her Count VIII Para de Medina states a claim for conversion under state law against the City, asserting that in the police search of her house her personal property was wrongfully appropriated and/or interfered with.

The City's motion seeks judgment as a matter of law on **all claims**. However, the City provides no argument in defense to the conversion claim. On the other hand, Para de Medina offers no counter-argument, and presents no evidence in opposition to the City's Rule 56 motion addressed to the conversion claim. The conversion claim seemingly has disappeared. Nevertheless, the court feels compelled to address it.

Despite the City's failure to offer any argument in support of its motion as to the conversion claim, the fact that it moved for summary judgment prevents the court from entirely ignoring it. *See C.G. v. Gann*, 231 Fed. Appx. 851 (11th Cir. 2007)(per curiam). After making the bare allegation of conversion, Para de Medina never again mentioned her conversion claim. She certainly has put forth no affirmative evidence to support such claim. She is obligated under Rule 56 to offer **something**. When a party makes a claim or defense but does not argue it, the claim or defense is deemed abandoned. *See Road Sprinkler Fitters Local Union No. 699 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (approving a district court's classification of a claim alleged in

the complaint but not addressed on summary judgment as abandoned). The Eleventh Circuit has further declared:

> There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is on the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)(internal citations omitted). The court finds that Para de Medina has abandoned her state-law conversion claim, rendering it unnecessary to explore the state-law municipal immunity defenses interposed by the City but never argued.

## Conclusion

Based on the foregoing, the City's motion for summary judgment will be granted by separate order. The City's motion to strike the affidavit of José Martinez will be denied, and the City's and Kelley's motion to strike the expert report of Dr. Phillip Hayden will be deemed moot.

DONE this 18th day of December, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE